UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAYLOR ANDERSON,

       Plaintiffs,

v.

KROGER COMPANY OF MICHIGAN, ET AL.,

       Defendants.
_____/

Case No. 15-12253

Paul D. Borman
United States District Judge

### OPINION AND ORDER GRANTING DEFENDANT UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION'S MOTION TO DISMISS (ECF NO. 11)

Now before the Court is Defendant United Food & Commercial Workers International Union's ("International") Motion to Dismiss filed on August 28, 2015. (ECF No. 11). Plaintiff filed her response on September 21, 2015 (ECF No. 16) and thereafter, International filed its reply (ECF No. 19).

Plaintiff filed her original complaint on June 22, 2015 against Defendants Kroger Company of Michigan ("Kroger"), Kroger Company of Michigan Store #652 ("Store 652"), International, United Food & Commercial Workers Local 876 ("Local 876"), and Sharon Puckett, Kroger's Loss Prevention Manager. Plaintiff's claims arise from her alleged wrongful suspensions, treatment, and ultimate termination by Kroger, Store 652, and Puckett. Plaintiff also initially alleged that both Local 876 and International breached their "duties of fair representation" in violation of 9(a) of the National Labor Relations Act.

On July 28, 2015, International filed its first Motion to Dismiss arguing that because International was not Plaintiff's exclusive bargaining representative it had no duty of fair

representation to Plaintiff as a matter of law. (ECF No. 6, citing *Blesedell v. Chillicothe Tel. Co.*, 2013 WL 6096329 (S.D. Ohio, Nov. 19, 2013) (collecting authority)). In response, Plaintiff filed her first Amended Complaint which eliminated the "duty of fair representation" claim against International, but alleged International violated 42 U.S.C. § 1981 by discriminating against her because of her race and such discrimination interfered with her "contractual rights under the CBA, her rights under the National Labor Relations Act, and her enjoyment of the terms, conditions, privileges and benefits of her employment." (ECF No. 10, Am. Compl. ¶ 227). Thereafter, International filed their second Motion to Dismiss which is currently before the Court. (ECF No. 11).

A hearing on this matter was held on October 21, 2015. For all the following reasons, the Court will GRANT Defendant International's motion to dismiss.

## II. BACKGROUND

Plaintiff is an African-American woman who was employed as a clerk at Defendant Kroger Company of Michigan Store 652 ("Store 652") from April 2012 until she was terminated on October 29, 2014. (Am. Compl. ¶¶ 2, 9, 61). Defendant United Food & Commercial Workers International Union ("International") is an "international labor union and parent" to Defendant United Food & Commercial Workers International Union Local 876 ("Local 876"). (*Id*. at ¶¶ 5-6). Local 876 is the "local affiliate of [International] that represented Plaintiff." (*Id*.). While employed at Store 652, Plaintiff was required to join and remain a member of Local 876.[1] (*Id*. at ¶ 10). Plaintiff claims that

---

[1] Although Plaintiff's Amended Complaint states that she was required to join and remain a member of both International and Local 876 (Am. Compl. at ¶ 10), it is clear from the CBA attached to International's Motion to Dismiss (Ex. 1) that Plaintiff was only a member of Local 876 because International was not a signatory to the CBA. Plaintiff does not dispute this fact in her response and clarifies that she was only required to join and remain a member of Local 876.

she had a "more than satisfactory work record" while employed by Store 652. (*Id*. at ¶ 11).

On July 23, 2014 Plaintiff received her first disciplinary action regarding being absent or tardy on three occasions: June 19, 2014, June 22, 2014, and July 20, 2014. (*Id*. at ¶ 12). Plaintiff, suffers from a medical condition that affects the ability of her blood to clot. (*Id*. at ¶¶ 16-17). As an accommodation for this medical condition, Defendant allowed Plaintiff to immediately treat her herself upon being injured. (Am. Compl. at ¶ 17). On September 7, 2014 Plaintiff was stung by a bee while she retrieved shopping carts with a colleague. (*Id*. at ¶ 18). Plaintiff immediately went to her car and treated the sting and checked for bleeding. (*Id*. at ¶¶ 19-21). Thereafter, a loss prevention employee accused Plaintiff and her colleague of wasting time and they were suspended pending advisability of discharge. (*Id*. at ¶¶ 22-23). Plaintiff filed a grievance and, after producing the bee which stung her at her grievance meeting, she and her colleague returned to work on a last chance agreement. (*Id*. at ¶¶ 26-27).

On October 8, 2014, Plaintiff returned to work and "was repeatedly disciplined and harassed". (*Id*. at ¶ 30). On October 9, 2014, Plaintiff was again disciplined for being absent or tardy on three occasions: July 20, 2014, August 11, 2014, and October 8, 2014. (*Id*. at ¶ 31). This second discipline included a tardy, July 20, 2014, that had already been included in the earlier discipline and also included dates during the time period when Plaintiff was suspended. (*Id*. at ¶¶ 33-34). Then, on October 19, 2014, Plaintiff was disciplined a third time for being absent or tardy on August 31, 2014 and October 19, 2014, despite the fact the August 31, 2014 fell during the time frame for which she had been previously disciplined. (*Id*. at ¶ 37). Plaintiff's October 19, 2014

---

(Pl.'s Resp. at 1). Moreover, Plaintiff's Amended Complaint states that Local 876 was "Plaintiff's sole representative". (Am. Compl. at ¶¶ 139-40).

Constructive Advice Record erroneously indicated that she had been placed on "Step #2" infraction. (Am. Compl. at ¶¶ 39-42). As a result of the Constructive Advice Record, Plaintiff was suspended for three days: October 20, 21, and 22, 2014. (*Id*. at ¶ 45).

On October 23, 2014, Plaintiff filed a grievance challenging the October 19, 2014 discipline. (Am. Compl. at ¶ 46). On that same date, Plaintiff informed "Local 876 that she was being harassed." (*Id*. at ¶ 49). "Local 876, however, failed to file a grievance specifically regarding Defendants Kroger's and Kroger 652's harassment of Plaintiff." (*Id*. ¶ at 50).

On October 29, 2014, Plaintiff was falsely accused of stealing bottle return slips from Kroger 652. (*Id*. at ¶ 62). Plaintiff was called to her store manager's office, where Defendant Sharon Puckett and a co-store manager were waiting. (*Id*. at ¶¶ 64-65). Defendant Puckett then locked the door to the office and interrogated Plaintiff and refused to let her leave the office. (*Id*. at ¶¶ 66, 69-95). Defendant Puckett also allegedly denied Plaintiff union representation, and forced Plaintiff to take off her shirt, shoes, and socks in an effort to find stolen bottle return slips. (*Id*.). Defendant Puckett threatened Plaintiff with jail if she did not resign, and told Plaintiff her friends would be fired if she did not confess to the theft. (*Id*.). Defendant Puckett also physically engaged Plaintiff over possession of Plaintiff's cellular phone. (Am. Compl. at ¶¶ 77-78). Ultimately, under duress, Plaintiff filled out a pre-printed form indicating that she resigned her position and also wrote that she gave "Kroger permission to keep my paychecks as restitution for the bottle slips." (*Id*. at ¶¶ 90-94).

After initially being unable to reach or leave a message for her union representative, Plaintiff filed a grievance on October 30, 2014 with Local 876 regarding her forcible resignation. (*Id*. at ¶¶ 97-100). On November 7, 2014, Plaintiff's Step 1 grievance meeting was held and her manager

4

informed her that "management and loss prevention had targeted her since her return to work on October 8, 2014." (*Id*. at ¶ 101). Her Step 2 grievance meeting was held on November 20, 2014. (*Id*. at ¶¶ 107, 109).

On January 23, 2015, in response to Plaintiff's grievance and the Step 1 and Step 2 meetings, Doug Findlay ("Findlay") informed Plaintiff via letter that no contractual violation had been found and Plaintiff's grievance would be discontinued. (*Id*. at ¶ 114). Plaintiff represented, erroneously, in her Amended Complaint that Doug Findlay was a representative of International.[2] (*Id*. ¶¶ 114, 116). Thereafter, on March 7, 2015, Plaintiff first contacted International and requested to file an "internal grievance" against Local 876. (Am. Compl. at ¶ 115).

On March 19, 2015, as a result of her request to International, Findlay called Plaintiff. (*Id*. at ¶ 116). During that conversation, Plaintiff requested a copy of the Defendant Store 652's video evidence relevant to the allegation that she stole bottle return slips, and relayed to Findlay that she wished to grieve her "union because it did not properly represent her in her termination grievance." (*Id*. at ¶ 117). Findlay refused to give Plaintiff a copy of the video evidence and then accused Plaintiff of being "a thief" and hung up on her. (*Id*. at ¶ 123). In a March 20, 2015 letter, Findlay "memorialized his conversation with Plaintiff" and provided her with a copy of her written statement, her October 20, 2014 grievance, and a copy of his previous January 23, 2014 correspondence, but not the video evidence that purportedly showed Plaintiff stealing bottle return slips as Plaintiff had requested. (*Id*. at ¶ 123).

---

[2] As discussed *infra*, the Court does not base its decision to dismiss International because Findlay was not an employee of International.

Plaintiff then personally filed a charge with the National Labor Relations Board against Store 652 which was dismissed in June 2015. (*Id*. at ¶125).

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To sufficiently state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores*, Inc., 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Treesh*, 487 F.3d at 476 (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

A plaintiff must provide more than "formulaic recitation of the elements of a cause of action ... Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555 (internal citations omitted). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the concept of "plausibility" stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6

> inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 678. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-56). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

Generally, in evaluating a motion to dismiss a court cannot look beyond the complaint and its attached pleadings. If a party relies upon matters outside the pleadings and those materials are not excluded by the court, the motion to dismiss is converted into one for summary judgment pursuant to Rule 56 and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). However, a court may consider certain matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment, such material includes: "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein". *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (citation and internal quotation marks omitted); *see also Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

Here, International has attached the three exhibits to its Motion to Dismiss and its Reply: (1) the Collective Bargaining Agreement between Defendant Kroger Company and Defendant Local

876; (2) a January 23, 2015 letter on Local 876 letterhead from Doug Findlay to Plaintiff indicating that Local 876 would not be pursuing her grievance; and (3) a March 20, 2015 letter on Local 876 letterhead from Doug Findlay to Plaintiff memorializing a phone conversation from March 19, 2015 and indicating that he was sending Plaintiff copies of her resignation, grievance, and earlier letter. (*See* Mot. Exs., 2 & 3; Reply, Ex. 2).  Plaintiff also attaches material outside the record to her response: a "Contact Us Form" webpage indicating she contacted International on March 7, 2015 with a request that she wished to "file a grievance against [her] local union".  (Pl.'s Resp., Ex. 1).

The Court finds that the CBA is central to Plaintiff's claims and specifically referenced in her Amended Complaint.  (*See* Am. Compl. ¶¶ 114, 127, 129, 133, 135, 139. 227).  The Court further concludes that reliance upon this document will not convert International's motion to dismiss into a motion for summary judgment.

The Court finds that the letters from Doug Findlay are specifically referred to in Plaintiff's Amended Complaint and central to her claims.  (*See* Am. Compl. ¶¶ 10, 114, 123, 127, 133, 139, 222, 223, 227).  The Court further notes that Findlay's interactions with Plaintiff appear to be the basis and/or central to her claim against International.  Plaintiff's exhibit is proof that she contacted International on March 7, 2015 through their website, an action that is also referred to in her complaint (Am. Compl. ¶ 115), and is similarly central to her claim regarding International.  Plaintiff objected to International's inclusion of, and reliance on, the Findlay letters at this stage of the litigation.  In deference to Plaintiff's objection, and because the Findlay letters and the "Contact Us Form" webpage submitted by Plaintiff are documents that are not essential to the Court's analysis, the Court will exclude these documents from the record and expressly decline to consider these documents in its analysis.

IV. ANALYSIS

"42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcing of private contracts." *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (citing 42 U.S.C. § 1981). In pertinent part, § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. The statute goes on to define "make and enforce contracts" as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "A cause of action under § 1981 may be brought when a plaintiff has suffered an injury flowing from the racially-motivated breach of his contractual relationship with another party." *Han v. Univ. of Dayton*, 541 F. App'x 622, 626 (6th Cir. 2013) (citing *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006)). "Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Domino's Pizza*, 546 U.S. at 476.

Further:

> In order to establish a claim for racial discrimination under section 1981, a plaintiff must plead and prove that (1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a).

*Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (citation omitted). The "'intent' element of the claim can be established either by direct evidence or inferentially." *Id.* (citation

9

omitted). When a plaintiff seeks to establish "intentional discrimination inferentially in a section 1981 case, federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Id.* (citation omitted); *see also Wade v. Knowxvill Utils. Bd.*, 259 F.3d 452, 454 (6th Cir. 2001) (noting same); *Lindsay v. Yates*, 489 F.3d 434, 483 (6th Cir. 2007) (noting that *McDonnell Douglas* analysis applies to federal housing-discrimination claims whether such claims are brought under the Federal Housing Act, or 42 U.S.C. §§ 1981, 1982). Further, while establishing the elements of a *prima facie* case of discrimination pursuant under *McDonnell Douglas* or producing direct evidence of racial discrimination will ultimately be plaintiff's burden, "*McDonnell Douglas* sets an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 501, 510 (2002); *see Yates*, 489 F.3d 434, 483-40 (noting that *Swierkiewicz* was an employment-discrimination claim but explicitly finding that "*Swierkiewicz* applies to any claim covered by the *McDonnell Douglas* framework.") (citing with approval, *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006); *Edwards v. Marin Park, Inc.* 356 F.3d 1058, 1062 (9th Cir. 2004)).

International sets forth a number of arguments why Plaintiff fails to state a viable claim against it, including that: (1) Plaintiff has failed to identify any "contract or laws" that require International need take any action on her behalf; (2) Plaintiff cannot evidence that International would be vicariously liable for Local 876's discriminatory acts; and (3) Plaintiff fails to set forth sufficient facts regarding racial discrimination by International or Local 876 to plausibly support a § 1981 claims against International directly or based upon vicarious liability. The Court addresses the pertinent and successful arguments in turn.

A.     Discrimination by International

The Court finds that Plaintiff's Amended Complaint fails to allege any facts from which one could infer that International directly discriminated against Plaintiff based on her race. Plaintiff does not appear to contest this fact in her Response and only addresses Defendant International's argument regarding whether she has sufficiently asserted a claim pursuant to § 1981 arising from International's vicarious liability for Local 876's allegedly discriminatory actions. (Pl.'s Resp. at 17-20).

Plaintiff alleges in her Amended Complaint that International's "actions, or lack of action were done in a discriminatory (race/gender), arbitrary and/or invidious manner." (Am. Compl. ¶ 225). However, Plaintiff fails to allege "sufficient factual matter", if accepted as true, that would allow the court to infer that International's failure to "formalize Plaintiff's complaint into an appeal of the Local union's decision not to fully pursue a grievance of her termination; failed to conduct a formal investigation into Plaintiff's complaint; and filed to allow and/or assist Plaintiff in exhausting all of her administrative remedies" (Am. Compl. ¶ 221), flowed from an intentional bias against her race and impaired her contractual rights. *See Iqbal*, 556 U.S. at 678.

Plaintiff alleges that International's representative, Doug Findlay, called her a "derogatory term" and treated her in a "derogatory manner" because she is an African-American woman. (Am. Compl. ¶¶ 223-24). However, Plaintiff alleges only that Findlay referred to her as a "thief", which is a term that does not implicate Plaintiff's race. Plaintiff's only other alleged contact with International was her request on March 7, 2014 for an "internal grievance" against Local 876. Further, Plaintiff has set forth no allegations regarding any direct evidence of racial discrimination by International, nor has Plaintiff alleged that International treated any similarly situated non-

11

African-Americans any differently that Plaintiff. Moreover, Plaintiff did not allege that she ever advised International that she had been racially discriminated against by her employers or by Local 876. In fact, there is nothing in the Amended Complaint from which a reasonable person could infer that any International employee or representative (including Findlay) had knowledge of Plaintiff's race.

For all these reasons, the Court finds that Plaintiff has failed to state a § 1981 claim against International based on its own direct actions.

B.      Vicarious Liability and Local 876's Discriminatory Acts

Plaintiff argued in her Response and during oral argument that she sufficiently pled a § 1981 claim against International based on vicarious liability, such that International is responsible for any actionable discrimination on the part of Local 876.

The Sixth Circuit has found that "[c]ommon law agency theories of vicarious liability govern the liability of international labor organizations for the acts of their local unions that violate Title VII and § 1981." *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 409 (6th Cir. 1999). To succeed on a claim of vicarious liability a plaintiff must "adduce specific evidence that the international 'instigated, supported, ratified, or encouraged' those actions or 'that what was done was done by their agents in accordance with their fundamental agreement of association.'" *Id*. at 409 (quoting *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1427 (D.C.Cir. 1988)). "Thus, '[a]s a general proposition ... international labor unions must bear a heavy responsibility in giving effect to the remedial provisions of both Title VII" and § 1981." *Id*. (citation omitted). Further, "where an agency relationship exists, international unions are not only vicariously liable, they have an affirmative duty to oppose the local's discriminatory conduct." *Id*. (citation

omitted).

The Court finds that Plaintiff has failed to set forth sufficient factual matter in her complaint from which a court could infer that Local 876 discriminated against her based on her race in violation of § 1981. Accordingly, the Court need not reach the issue of whether International could be vicariously liable for the racially discriminatory actions of Local 876.[3] Logically, where Plaintiff has failed to set forth facts from which one could reasonably infer that Local 876 discriminated against her based on her race, her claim of vicarious liability premised on those same acts must also fail.

In *Han v. University of Dayton*, 541 F. App'x 622 (6th Cir. 2013), the Sixth Circuit examined an analogous case. The plaintiff in *Han* was a male Asian-American professor who alleged that he had been racially discriminated against by his employer in violation of § 1981 when he received a poor evaluation by the university committee and was ultimately replaced by a white male professor despite receiving other positive reviews. *Id.* at 624-25. The Sixth Circuit noted that "although Plaintiff's complaint need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could draw the reasonable inference that Defendants discriminated against Plaintiff". *Id*. at 626 (citation omitted). The Sixth Circuit went on to reason that

---

[3] While International argues that Plaintiff cannot "adduce evidence" to show that International would be vicariously liable for Local 876's actions, such an inquiry is very fact specific and inappropriate given the procedural posture of this case. In the touchstone case regarding a claim of vicarious liability of an international union under § 1981, *Alexander*, the Sixth Circuit examined the claim after a *bench trial*. *Alexander*, 177 F.3d at 399. The motion before the Court is a motion to dismiss, thus, International's attempt to have this Court determine, before discovery, whether Plaintiff has adduced sufficient evidence is misplaced.

> Plaintiff pleads his own race and gender, and alleges that, as a result of his race and gender, he was given a bad evaluation by the PRT committee and then ultimately fired. However, Plaintiff alleges no set of facts, beyond these bare and conclusory assertions, from which a reasonable person could infer how his race or gender factored in the University's decisions regarding his employment or cause him to lose his job, as opposed to any other, non-discriminatory basis for decisions regarding his employment.[4]

*Id*. at 626-27. The Sixth Circuit concluded that plaintiff had simply alleged that he was an Asian-American male who was qualified for his job, but had failed to allege any facts that showed he was "entitled to relief" rather than merely create "speculation or suspicion." *Id*. at 627 (citing *Twombly*, 550 U.S. at 553-53).

The Sixth Circuit used the same analysis but came to the opposite conclusion in *Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012). In *Keys*, the Sixth Circuit reversed a lower court that had dismissed a plaintiff's Title VII and § 1981 discrimination claims because she failed to allege facts that plausibly established a *prima facie* case of race discrimination. In *Keys*, the Sixth Circuit explained that a plaintiff was not required to establish a *prima facie* case under *McDonnell Douglas*, as "it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id*. at 609 (quoting *Swierkiewicz*, 534 U.S. at 511). However, the Sixth Circuit made clear that pursuant to *Twombly* and *Iqbal* there remains a "plausibility" standard "for assessing whether a complaint's factual allegations support its legal conclusions, and that standard applies to causation in discrimination claims." *Id*. at 610. The Sixth Circuit went on to find in *Keys* that the plaintiff's

---

[4] The Court notes that the plaintiff in *Han* also brought a claim pursuant to Title VII. In the present case, while Plaintiff also makes reference to her gender as a possible reason for her mistreatment; § 1981 only addresses racial discrimination.

14

complaint contained allegations that were "neither speculative nor conclusory" and observed the plaintiff had alleged that the defendant had a pattern or practice of discriminating against African American managers in "hiring, compensation, promotion discipline, and termination"; had included "specific events in each of those employment-action categories where [plaintiff] alleged she was treated differently than her Caucasian management counterparts"; had identified "key supervisors and other relevant persons by race and either name or company title"; and had alleged that the plaintiff and "other African Americans received specific adverse employment actions notwithstanding satisfactory employment performances." *Id.* Accordingly, the Sixth Circuit concluded that the plaintiff stated a plausible claim because it was based on sufficient factual allegations. *Id.* at 610-611; *see also 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (affirming the dismissal of a race discrimination claim when the plaintiffs alleged only their belief that a bank had refinanced loans of delinquent white borrowers but the plaintiffs had failed to identify those borrowers.); *James v. Hampton*, 592 F. App'x 449, 461 (2015) (where a plaintiff pled a violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983, also subject to the *McDonnell Douglas* framework, the Sixth Circuit held the plaintiff's complaint "provide[d] enough facts to 'raise a right to relief above the speculative level'" because she did not merely make "'conclusory allegations' that the Judicial Tenure Commission treated white judges differently, but identifie[d] specific individuals and summarize[d] instances of their misconduct.").

In the instant action, Plaintiff has made only bare and conclusory statements regarding Local 876's racially discriminatory actions. For instance, Plaintiff states: (1) "Defendant Local 876's actions, or lack of action, were done in a discriminatory, arbitrary and/or invidious manner" (Am.

Compl. ¶ 141); and (2) "Defendant Local 876 did not treat other, non-African-American members in the same manner it treated Plaintiff". (*Id*. at ¶ 143). Yet, Plaintiff has alleged no underlying facts in her 228 paragraph Amended Complaint that support these threadbare statements. Similar to *Han*, Plaintiff merely asserted that she is an African-American woman who was qualified for her position, but failed to allege any other factual details from which a reasonable person could infer that Local 876 discriminated against her based on her race rather than any other non-discriminatory factor.

Plaintiff does allege that on October 23, 2014, she filed a grievance with Local 876 regarding her October 19, 2014 discipline and informed "Local 876 that she was being harassed". (Am. Compl. at ¶¶ 46-49). "Local 876, however, failed to file a grievance specifically regarding Defendants Kroger's and Kroger 652's harassment of Plaintiff." (*Id*. ¶ at 50). Yet, these claims regarding "harassment" are untethered to any allegation of fact that could raise a plausible inference that the "harassment" was tied to her *race*. Unlike the plaintiff in *Keys*, Plaintiff failed to allege the race of any person mentioned in her Amended Complaint beyond herself, failed to set forth any facts indicating the identity or position of any similarly situated non-African-American person being treated differently than she, and failed to allege any act that could be construed as demonstrating racial animus on behalf of Local 876 representative or employee.

Given the lack of any facts in the Amended Complaint that could raise a reasonable inference that Local 876 treated Plaintiff differently based on her race, the Court finds that Plaintiff fails to state a plausible claim of racial discrimination under § 1981 upon which International could be held vicariously liable. Accordingly, the Court will grant Defendant International's Motion to Dismiss.

## V. CONCLUSION

For all these reasons, the Court GRANTS International's Motion to Dismiss (ECF No. 16).

IT IS SO ORDERED.

                                              s/Paul D. Borman  
                                              PAUL D. BORMAN  
                                              UNITED STATES DISTRICT JUDGE

Dated:  November 13, 2015

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 13, 2015.

                                              s/Deborah Tofil  
                                              Case Manager